IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KENNETH SMILEY, JR. dba
KEN'S KARS,

    Plaintiff,

v.

CITY OF DAYTON, OHIO,

    Defendant.

:
:
:
:
:

Case No. 3:14-cv-271

JUDGE WALTER H. RICE

DECISION AND ENTRY RESERVING RULING ON PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE THE AMOUNT OF PLAINTIFF'S SETTLEMENT WITH THE STATE OF OHIO, AND TO REQUIRE THAT ANY TESTIMONY AS TO THE VALUE OF THE PROPERTY BE RESTRICTED TO THE TIME OF THE TAKING (DOC. #49), AND OVERRULING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE ILLEGALITY OF THE VACATION OF SHAW AVENUE (DOC. #50)

Plaintiff Kenneth Smiley, Jr., alleges that the City of Dayton violated his constitutional rights when it took his real property for public use without just compensation. Trial is set for January 23, 2017. This matter is currently before the Court on two pending motions: (1) Plaintiff's Motion in Limine to Exclude the Amount of Plaintiff's Settlement with the State of Ohio, and to Require that Any Testimony as to the Value of the Property Be Restricted to the Time of the Taking (Doc. #49); and (2) Plaintiff's Motion for Partial Summary Judgment as to the Illegality of the Vacation of Shaw Avenue (Doc. #50).

I.    Background and Procedural History

Plaintiff Kenneth Smiley, Jr., operates Ken's Kars, a used car lot in Dayton, Ohio. In 2006, the Ohio Department of Transportation ("ODOT") appropriated 10,940 square feet of Plaintiff's commercial property in connection with improvements being made to Interstate 75. Doc. #54-1, PageID#414. Plaintiff was left with a Residue of 6,049 square feet of land (.14 acre). The Residue bordered the south side of Shaw Avenue, a one-way street that ran westward from North Main Street. *Id.* ODOT offered to buy the Residue for $1,000, but Plaintiff refused the offer. *Id.*

In March of 2008, the City Plan Board of the City of Dayton met to discuss ODOT's requests to vacate various streets and alleys in connection with the I-75 improvement project. Shaw Avenue was one of the streets slated to be vacated. After Plaintiff and others who owned property along Shaw Avenue expressed concern about being landlocked, ODOT agreed to withdraw its request to vacate that small portion of Shaw Avenue. Doc. #58, PageID##559-60. Thereafter, in July of 2008, Plaintiff agreed to settle all claims against ODOT for $462,800.00. Doc. #54-1, PageID##429-34. He continued to use the Residue for business purposes.

According to the Amended Complaint, in May of 2011, the City of Dayton removed the pavement from Shaw Avenue, leaving this Residue landlocked with no street access. The City also allegedly removed asphalt and balustrades from the Residue and built a public park there. In the summer of 2014, the City passed

a resolution of intent to appropriate the Residue. When the City failed to file the requisite appropriation action within the agreed-upon time period, Plaintiff filed suit, alleging an unconstitutional taking of his property. The City of Dayton later filed a Counterclaim and Petition for Appropriation, and a Third Party Complaint against Carolyn Rice, Treasurer. Doc. #38.

After attempts at mediation failed, Plaintiff filed a Motion in Limine to Exclude the Amount of Plaintiff's Settlement with the State of Ohio, and to Require that any Testimony as to the Value of the Property be Restricted to the Time of the Taking, Doc. #49. Plaintiff also filed a Motion for Partial Summary Judgment as to the Illegality of the Vacation of Shaw Avenue, Doc. #50. The Court turns first to the partial summary judgment motion.

## II. Plaintiff's Motion for Partial Summary Judgment as to the Illegality of the Vacation of Shaw Avenue (Doc. #50)

Plaintiff seeks partial summary judgment concerning the illegality of the City's vacation of Shaw Avenue. He argues that the City may vacate a street in just one of two ways: (1) in accordance with Section 95.80(A) of the City of Dayton Code of Ordinances, the City can vacate a street pursuant to a petition signed by all of the owners of the property that abut the street; or (2) under Ohio Revised Code § 723.05, the City can pass an ordinance vacating the street if the Dayton City Commission finds that there is good cause for doing so and that the vacation would not be detrimental to the general interest.

Because it is undisputed that the City pursued neither of these options, Plaintiff argues that he is entitled to summary judgment on the question of the illegality of the vacation of Shaw Avenue. He then argues that, because the City illegally vacated Shaw Avenue, the value of the Residue must be assessed as if the property still had street access.

A. **Summary Judgment Standard**

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

4

475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S.

5

1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

**B.   Analysis**

The City of Dayton argues that Plaintiff's motion for partial summary judgment must be denied for several reasons: (1) Shaw Avenue has not been vacated; (2) it was ODOT, not the City of Dayton, that removed the pavement from Shaw Avenue; (3) Plaintiff sold his access rights to the Residue to the State, and has already been fully compensated by the State for the landlocked nature of the Residue; and (4) the requested relief improperly invades the province of the jury, which must determine the fair market value of the property. Docs. ##54, 60. The City contends that, because it is not responsible for eliminating Plaintiff's access to the Residue, the value of the Residue must be calculated as a .14 acre landlocked parcel.

The City acknowledges that it did not employ either Section 95.80(A) of the City of Dayton Code of Ordinances, or Ohio Revised Code § 723.05, to vacate Shaw Avenue. Tony Krueger, of the City's Department of Planning and Community Development, submitted an affidavit stating that Shaw Avenue has not been vacated *at all*. At the March 4, 2008, Plan Board Meeting, ODOT withdrew its request that the City vacate Shaw Avenue. Doc. #54-4, PageID#450.

According to Deputy Director and City Engineer Stephen Finke, "[a]fter ODOT closed the access to Shaw Avenue from North Main Street, the City removed the pavement from Shaw Avenue." However, the street has not been

6

"vacated." The City still owns and maintains the land, and still pays taxes on it. Shaw Avenue is still a right-of-way on the official county map. Doc. #54-3, PageID##446-47.

Moreover, even if the removal of the pavement from Shaw Avenue is deemed to be the equivalent of vacating the street, the City now disclaims responsibility for such actions. The City states that it has recently learned that ODOT was actually responsible for removing the pavement. According to Scott LeBlanc, an ODOT engineer, ODOT landlocked the property at issue by cutting off Shaw Avenue's access to North Main Street, and then removing the surface of the street. Doc. #60-1, PageID##574-75.

In addition, the City argues that Plaintiff sold his access rights to the Residue to the State, and has already been fully compensated by the State for the landlocked nature of the Residue. ODOT Real Estate Administrator Wayne Callahan avers that "[f]rom the beginning of [ODOT's appropriation] process, ODOT notified Mr. Smiley that the take would leave the Residue landlocked and that he was being compensated for the loss of access." Doc. #54-1, PageID#415. Callahan notes that the Pretrial Statement filed by ODOT stated that "it was buying the access rights and that $47,392 of the money deposited with the Court was for damage to the Residue for taking the access rights and leaving it landlocked." *Id.* at PageID##415, 439-40. Appraisers retained by both parties included damage to the Residue in their calculations. *Id.* at PageID##414-15.

7

Callahan states that the $462,800 settlement covered both the value of the land taken and compensation for the Residue being landlocked. *Id.* at PageID#415.

Plaintiff does not deny that he was told that ODOT's appropriation would leave the Residue landlocked. Nor does he deny that some of the documents filed in the ODOT litigation indicate that $47,392 of the total estimated value of the take was attributable to the damage resulting from the landlocked nature of the Residue. He flatly denies, however, that the final settlement included any compensation for loss of access to the Residue. Why would it? Although ODOT initially planned to vacate Shaw Avenue, it withdrew its request at the Plan Board Meeting on March 4, 2008, in response to protests from Plaintiff and others. As a result, the City agreed not to vacate the portion of Shaw Avenue that would leave the Residue landlocked.

Thereafter, Plaintiff agreed to settle his claims with ODOT for $462,800.00. According to Plaintiff, the fact that he would have continued access to the Residue "was an important part of [his] decision to settle with the State of Ohio as to the value of the appropriated property, in 2008." Doc. #50, PageID#391. He argues that it defies logic to believe that ODOT would have compensated him for loss of access to the Residue *after* it agreed to withdraw its request to vacate Shaw Avenue. Plaintiff also notes that the July 14, 2008, Judgment Entry makes no specific mention of compensation for loss of access to the Residue. Doc. #54-1, PageID##429-33.

8

The Court finds that genuine issues of material fact preclude summary judgment on the question of the alleged illegal vacation of Shaw Avenue and its attendant consequences. There is sufficient evidence from which a reasonable jury could find that Shaw Avenue was not "vacated," and that the City of Dayton is not responsible for removing the pavement.

In the Court's view, Plaintiff's argument, that he has not yet been compensated for loss of access to the Residue, is reasonably persuasive. Nevertheless, there is a factual dispute about who is *responsible* for that loss of access – the City, ODOT, or both.[1] If the City is not responsible for cutting off access to the Residue, it is not fair to hold the City responsible for the resulting decrease in property value. Until this factual dispute is resolved, the Court cannot determine whether the value of the Residue should be assessed as if it still had street access, or as if it is landlocked.

For these reasons, the Court OVERRULES Plaintiff's Motion for Partial Summary Judgment as to the Illegality of the Vacation of Shaw Avenue.

---

[1] Notably, ODOT is not a party to this litigation. It is unclear, and not relevant to the motions litigated, whether Plaintiff's previous settlement with ODOT would bar him from seeking additional compensation from ODOT for the loss of access to the Residue.

9

### III. Plaintiff's Motion in Limine to Exclude the Amount of Plaintiff's Settlement with the State of Ohio, and to Require that Any Testimony as to the Value of the Property Be Restricted to the Time of the Taking (Doc. #49)

The Court turns next to Plaintiff's Motion in Limine to Exclude the Amount of Plaintiff's Settlement with the State of Ohio, and to Require that Any Testimony as to the Value of the Property Be Restricted to the Time of the Taking. Doc. #49.

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize the Court to rule on an evidentiary motion in limine, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial. *See Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Pretrial orders also often save the parties time and cost in preparing for trial and presenting their cases.

Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). A court should not make a ruling in limine unless the moving party meets its burden of showing that the evidence in

10

question is clearly inadmissible. *Indiana Ins. Co.*, 326 F. Supp. 2d at 846; *Koch*, 2 F. Supp.2d at 1388. If this high standard is not met, evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial. *Indiana Ins. Co.*, 326 F. Supp. 2d at 846.

Plaintiff argues that Federal Rule of Evidence 408 prohibits the City from using evidence of the amount of the ODOT settlement, *i.e.*, $462,800.00, to prove or disprove the value of his disputed claim with the City of Dayton. He further argues that such evidence should be excluded under Federal Rule of Evidence 403, because its probative value is substantially outweighed by the danger of unfair prejudice. Because Plaintiff has failed to establish that evidence concerning the amount of the ODOT settlement is clearly inadmissible, the Court will defer ruling on this issue until trial.

Rule 408 provides as follows:

(a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a

11

contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

The City does not seriously quarrel with the fact that evidence concerning the amount of a settlement agreement, even with a third party, is generally inadmissible to prove or disprove the *amount* of a disputed claim. It argues, however, that because Plaintiff is seeking compensation for loss of access to the Residue, fairness requires that the jury be permitted to consider evidence that he has *already* been compensated for that same loss. The Court agrees with the City in principle; however, as discussed above, Plaintiff has flatly denied that the ODOT settlement included *any* compensation for loss of access to the Residue.

In the Court's view, it is best to RESERVE RULING on this issue. The Court will be in a better position at trial to determine whether evidence of the amount of the ODOT settlement is excludable under Rule 408. Counsel is directed to avoid any mention of the amount of settlement during voir dire and approach the bench prior to introducing any such evidence at trial. At that time, the Court can also determine whether, even if admissible, such evidence should nevertheless be excluded under Federal Rule of Evidence 403, because its probative value is substantially outweighed by the danger of unfair prejudice.[2]

---

[2] Citing *Almota Farmers Elevator & Warehouse Co. v. U.S.*, 409 U.S. 470, 474 (1973), Plaintiff correctly notes that the value of the property must be determined at the time of the taking. In this case, the ODOT settlement was finalized in July of 2008. The alleged "taking" did not occur until 2011, when the pavement was

12

IV. Conclusion

For the reasons explained above, the Court OVERRULES Plaintiff's Motion for Partial Summary Judgment as to the Illegality of the Vacation of Shaw Avenue, Doc. #50, and RESERVES RULING on Plaintiff's Motion in Limine to Exclude the Amount of Plaintiff's Settlement with the State of Ohio, and to Require that Any Testimony as to the Value of the Property Be Restricted to the Time of the Taking, Doc. #49.


Date: January 10, 2017        _____
                              WALTER H. RICE
                              United States District Judge

---

removed from Shaw Avenue, and other improvements were removed from the Residue.

13